STUART DELERY
Assistant Attorney General
S. AMANDA MARSHAL
United States Attorney
RON SILVER
Chief, Civil Division
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
ERIC KAUFMAN-COHEN
Trial Attorney
Torts Branch, Civil Division
450 Golden Gate Avenue, Room 7-5395
San Francisco, California 94102-3463
Telephone: (415) 436-6647
Facsimile: (415) 436-6632
E-mail: eric.kaufman-cohen@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SHAVER TRANSPORTATION COMPANY, | ) Civil No. 3:12-CV-01448-SI |
| | ) |
| | ) IN ADMIRALTY |
| Plaintiff, | ) |
| | ) THE UNITED STATES' |
| | ) MEMORANDUM OF POINTS AND |
| vs. | ) AUTHORITIES IN OPPOSITION TO |
| | ) PLAINTIFF'S MOTION FOR |
| UNITED STATES OF AMERICA, | ) SUMMARY JUDGMENT |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................1

II. STATEMENT OF FACTS ......................................................................... 4

III. DISCUSSION ......................................................................................... 10

    A. The United States Has Not Waived Its Sovereign Immunity
    And Consented To Be Sued Herein Under Any Of The Statues
    Applicable To Plaintiffs' Complaint For Breach of Contract ...................... 10

        1. Waiver of Sovereign Immunity Under the PVA, CDA and SIAA......11

            a. Public Vessels Act ..............................................................11

            b. Contract Disputes Act ........................................................12

            c. Interocean Could Not Bind the United States to a
                Subcontract ........................................................................ 15

            d. Suits in Admiralty Act .......................................................17

    B. Material Issues Of Fact Exist Regarding Whether There Is Privity
    Of Contact Between The United States And Shaver To What Extent,
    If Any, Interocean And/Or PCMA Were Acting As Agents Of The
    United States Thereby Precluding Summary Judgment On Shaver's
    Complaint ...................................................................................................18

IV. CONCLUSION .......................................................................................20

TABLE OF AUTHORITY

Cases

A & S Council Oil Co., Inc. v. Lader,
  56 F.3d 234 (D.C.Cir.1995) ............................................................................11

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).....................................19

Bearce v. United States,
  614 F.2d 556 (7th Cir.1980) ...........................................................................17

Bethlehem Steel Corp. v. Avondale Shipyards, Inc.,
  951 F.2d 92 (5th Cir. 1992) ......................................................................13, 14

C.A.R. Transp. Brokerage Co., Inc. v. Draden Restaurants, Inc.,
  213 F.3d 474 (9th Cir.2000) ...........................................................................19

Dalehite v. United States,
  346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)...........................................11

Dalton v. Southwest Marine,
  120 F.3d 1249 (Fed.Cir. 1997) .......................................................................13

Erickson Air Crane Co. of Washington, Inc. v. United States,
  731 F.2d 810 (Fed.Cir.1984)..........................................................................14

F.D.I.C. v. Meyer,
  510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ..................................11

Globex Corp. v. United States,
  54 Fed.Cl. 343 (2002)................................................................................4, 16

Green v. United States,
  530 F.Supp. 17 (N.D. Cal. 1981)...............................................................17, 18

Heydt v. United States,
  38 Fed.Cl. 286 (1997)....................................................................................17

Hillier v. Southern Towing Co.,
  714 F.2d 714 (7th Cir.1983) .....................................................................17, 18

Ingersoll-Rand Co. v. United States,
  780 F.2d 74 (D.C.Cir.1985) ...........................................................................13

Jo-Mar Corp. v. United States,
   15 Cl.Ct. 602 (1988)................................................................14

Lake Union Drydock Co. v. United States,
   2007 WL 2984707 (W.D.Wash. 2007) ..........................................13

Lehman v. Nakshian,
   453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) ..................10

Mason Agency Ltd. v. Eastwind Hellas SA,
   2009 WL 3109821 (S.D.N.Y. 2009) ...............................................1

Nelson v. United States,
   639 F.2d 469 (9th Cir. 1980) .......................................................12

Paragon Energy Corp. United States,
   953 F.2d 1337 (Fed.Cir. 1992)....................................................15

Putnam Mills Corp. v. United States,
   202 Ct.Cl. 1, 479 F.2d 1334 (Ct.Cl.1973).....................................15

Remolcadores De Malaga, S.A. v. United States,
   1990 WL 128214 (ED.La. 1990)....................................................3

Sealift Bulkers, Inc. v. Republic of Armenia,
   1996 WL 901091 (D.D.C. 1996) ....................................................4

Southern California Gas Co. v. City of Santa,
   Anna, 336 F.3d 885 (9th Cir. 2003)..............................................19

Southwest Marine Inc. v. Danzig,
   217 F.3d 1128 (9th Cir. 2000) .....................................................13

Southwest Marine, Inc. v. United States,
   43 F.3d 420 (9th Cir.1994)..........................................................14

Southwest Marine, Inc. v. United States,
   680 F.Supp. 1400 (N.D. Cal. 1988)............................................3-4

Southwest Marine, Inc. v. United States,
   926 F.Supp. 142 (N.D. Cal. 1995)...............................................12

Trauma Services Group v. United States,
   104 F.3d 1321 (Fed.Cir. 1997) ....................................................16

Trautman v. Buck Steber, Inc.,
   693 F.2d 440 (5th Cir. 1982) .................................................................12

United States Dep't of Energy v. Ohio,
   503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) ...............................11

United States v. Johnson Controls, Inc.,
   713 F.2d 1541 (Fed. Cir. 1983) .........................................................4, 15

United States v. King,
   395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)........................................11

United States v. Mitchell,
   445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) ................................11

United States v. Sherwood,
   312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) .....................................12

Whitey's Welding and Fabrication, Inc. v. United States,
   5 Cl.Ct. 284 (1984).........................................................................14

Williams v. Central Gulf Lines,
   874 F.2d 1058 (5th Cir.1989), ..........................................................17, 18

## Statutes

Contract Dispues Act,
   41 U.S.C. § 601 et seq.....................................................................16
   41 U.S.C. § 7101(7)........................................................................17
   41 U.S.C. § 71012 (d)......................................................................6
   41 U.S.C. § 7102(d)........................................................................17
   41 U.S.C. § 7103(a)(1) ...................................................................16
   41 U.S.C. §§ 7101, et seq.............................................................4, 16
   41 U.S.C. §§ 7104(a), 7104(b)(1) .......................................................17

Fed. R. Civ. P.
   12(b)(1) ....................................................................................4
   56.............................................................................................22

Public Vessels Act,

    46 U.S.C. §§ 31101, et seq. .............................................................4

    46 U.S.C. § 31102(a)(2) ...........................................................6, 15

    46 U.S.C. § 31103 ......................................................................6, 7

Suits in Admiralty Act,

    46 U.S.C. §§ 30901, et seq. ........................................................4, 6

    46 U.S.C. § 30903 .......................................................................20

    46 U.S.C. § 30903(a) ....................................................................7

I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The United States respectfully submits that Shaver Transportation Company's Motion for Summary Judgment must be denied on the grounds that the United States has not waived its sovereign immunity and consented to be sued herein on Shaver's breach of contract claim.[1]  However, were the Court to find that it does have subject matter jurisdiction, Shaver's motion must be denied on the grounds that material issues of fact exist as to whether (1) there was privity of contract between Shaver and the United States, and (2) whether Pacific Coast Maritime AG was acting as an agent of the United States when it procured the services of Shaver.  The United States denies both.

As discussed in more detail below, there is absolutely no privity of contract between Shaver and the United States.  "It is axiomatic that there can be no breach of contract unless there is a valid contract in the first instance."  *Mason Agency Ltd. v. Eastwind Hellas SA*, 2009 WL 3109821 (S.D.N.Y. 2009).  Because there is no privity of contract between Shaver and the United States, there has been no waiver of sovereign immunity under the three statutes applicable to Shaver's breach of contract claim:  The Public Vessels Act, 46 U.S.C. §§ 31101, *et seq.* ("PVA"), which incorporates the consistent provisions of the Suits in Admiralty Act, 46 U.S.C. §§ 30901, *et seq.* ("SIAA"), and the Contract Disputes Act, 41 U.S.C. §§ 7101, *et seq.*

---

[1]   The United States will be filing a motion to dismiss Shaver's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

("CDA").

The facts of this case are quite simple. The United States by and through the Department of Transportation, Maritime Administration ("MARAD") requested that its ship manger, Interocean American Shipping Corporation, procure tug services for two public vessels, the M/S PACIFIC COLLECTOR and the M/S PACIFIC TRACKER. Interocean in turn contacted Pacific Coast Maritime AG ("PCMA"), an independent agency that provides maritime services to vessel operators, and informed PCMA that it was in the need of towing services. PCMA than retained the services of Shaver Transportation Company, yet another independent contractor. Of significance here is the undisputed fact that there is no privity of contract between the United States and Shaver, nor is there privity of contract between Interocean and PCMA. The only parties who were arguably in privity of contract were PCMA and Shaver. Moreover, contrary to Shaver's unsupported allegations, at no time was PCMA an agent of the United States.

Upon completion of its towing services, Shaver invoiced PCMA. Again, it bears repeating, at no time was Shaver in privity of contract with the United States and at no time was PCMA an agent of the United States. Moreover, although there is a complete absence of any reference to Interocean by Shaver in its Complaint and motion, the United States notes, for clarity sake, that Interocean - the Government's actual ship operator – by express contractual terms did not have authority to act as the United States' agent with regard to services performed by a subcontractor, such as

Shaver in this case.

Once PCMA received Shaver's invoices, PCMA altered them by inflating the towing charges, and then passed the altered invoices onto Interocean. Interocean, unaware that PCMA had inflated the original charges on the Shaver invoices, paid the invoice charges to independent contractor PCMA with the full expectation that PCMA would pass the payments on to Shaver. Interocean in turn innocently passed PCMA's altered invoices on to MARAD for reimbursement. MARAD reimbursed Interocean the full, inflated, invoice charges. In the meantime, PCMA pocketed the entire amount of the payments it received from Interocean.

For reasons that are incomprehensible, Shaver has not sued PCMA, the unabashed wrongdoer, but has brought suit against the United States pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 30901, *et seq.* ("SIAA"). However, as discussed below, because the PACIFIC COLLECTOR and the PACIFIC TRACKER are public vessels and are part of the United States' National Defense Reserve Fleet (NDRF), the proper statute providing a possible waiver of sovereign immunity is the PVA, which incorporates consistent provisions of the SIAA. (46 U.S.C. § 31103) The PVA waives the United States sovereign immunity in cases involving compensation for towage. 46 U.S.C. § 31102(a)(2). However, cases involving alleged maritime contracts related to public vessels, including towage contracts, are subject to the CDA. 41 U.S.C. § 71012 (d), *see also, Remolcadores De Malaga, S.A. v. United* States, 1990 WL 128214 (ED.La. 1990), 1992 A.M.C. 14 (towage contract); *Southwest Marine,*

*Inc. v. United States*, 680 F.Supp. 1400 (N.D. Cal. 1988) (maritime ship repair contract). Courts have uniformly held that subcontractors are not in privity of contract with the Government and therefore they may not pursue a breach of contract claim against the United States under the CDA. *Globex Corp. v. United States*, 54 Fed.Cl. 343, 347 (2002); *United States v. Johnson Controls, Inc.*, 713 F.2d 1541 (Fed. Cir. 1983).

Finally, as stated above, the PVA incorporates the consistent provision of the SIAA. 46 U.S.C. § 31103. The SIAA permits actions against the United States only in cases "in which, if a vessel were privately owned or operated . . . or if a private person or property were involved, a civil action in admiralty could be maintained." 46 U.S.C. § 30903(a). Here there is no dispute that there was no privity of contract between Shaver and the United States. Absent a privity of contract, Shaver could not bring an action against a private party for breach of a maritime contract. *Sealift Bulkers, Inc. v. Republic of Armenia*, 1996 WL 901091 (D.D.C. 1996) (decided under SIAA, plaintiff not in privity of contract with United States, no cause of action under general maritime law for breach of contract.)

II.    STATEMENT OF FACTS

Both the PACIFIC COLLECTOR and the PACIFIC TRADER are public vessels owned by the United States by and through MARAD. The vessels are part of the United States' National Defense Reserve Fleet ("NDRF"). These two vessels are maintained in a reduced operating status for use by the Missile Defense Agency (MDA), similar to

MARAD's Ready Reserve Force (RRF) vessels, a subset of the NDRF available to support rapid deployment of U.S. military forces, equipment and supplies. (Declaration of William Cahill in Support of the United States Opposition to Plaintiff's Motion for Summary Judgment, ¶ 1, "Cahill Declaration".)

At the time of the events alleged in Shaver's Complaint the vessels were operated on behalf of the United States by Interocean American Shipping Corporation. (Since the time of the events alleged in the Complaint, Interocean has changed its name to Tote Services.) Interocean operated the vessels on behalf of MARAD pursuant to a ship management agreement. (Cahill Declaration ¶ 2.)

In January, February, April and May of 2011, MARAD notified Vince Corry, Interocean's Port Captain, and advised Mr. Corry that the vessels were in need of towing services. Mr. Corry in turn contacted independent contractor PCMA and requested that PCM procure the needed services. (See Declaration of Vince Corry in Support of the United States' Opposition to Motion for Summary Judgment, ¶ 2, hereinafter "Corry Declaration.") PCMA retained the services of Shaver, as an independent contractor, to provide the requested towing services. (Corry Declaration at ¶ 3.)

Upon completion of each towing operation Shaver invoiced PCM. (Attached as Exhibit "A" to the Corry Declaration are copies of the original seven invoices Shaver submitted to PCM, dated January 24, 2011; February 18, 2011; February 18, 2011; February 22, 2011; February 22, 2011; April 4, 2011; and May 31, 2011.) PCM then

forwarded the "Shaver invoices" to Interocean for payment. Interocean in turn paid PCM, in full, the amounts set forth in the "Shaver invoices" with the full expectation that PCM would pass on the payment to Shaver. After paying the invoices PCM forwarded to it, Interocean submitted the invoices to MARAD for reimbursement.[2] (See Corry Declaration ¶ 4.) Unbeknownst to Interocean, as well as MARAD, PCM did not provide Shaver with the payments made by Interocean.

By way of letter dated June 21, 2011, Shaver requested the services of Gordon T. Carey, Jr., attorney at law, to assist it collecting the past due funds owing on the seven invoices listed above. This letter was copied to Interocean. (See letter dated June 21, 2011 from Shaver to Gordon T. Carey, attached to the Corry declaration as Exhibit "B".) It was only after Interocean received the courtesy copy of Shaver's June 21, 2011 letter that it became known to Interocean that PCMA had not passed on the payments to Shaver. Moreover, and even more serious, was the fact that the invoices attached to the Shaver letter were not the invoices PCMA provided to Interocean for payment. Each of the seven invoices PCMA provided to Interocean had been altered. Attached to the Corry Declaration as Exhibit "C" are copies of the invoices sent by PCMA to Interocean. When compared to each of the original Shaver Invoices sent to PCMA (Exhibit "A" to the Corry Declaration) the Court will see that the invoices

---

[2] The United States would have liked to submit the receipts showing Interocean's payment to PCM, but the original documents were sent by Interocean to MARAD's Office of Inspector General and are now part of a criminal Grand Jury investigation into the conduct of PCMA. Interocean did not retain copies of the documents.

PCMA forwarded to Interocean were altered as follows:

1.      Invoice No. 0219441-IN, dated January 24, 2011 for services rendered on December 21, 2010.  The original Shaver invoice includes two 20% deductions in the amount of $647 each, for a total deduction of $1,294.  The original invoice also includes a "Fuel Surcharge" of 8%, for a total of $414.08.  The total for this original invoice is for $5,690.08.  The doctored invoice PCMA provided to Interocean for services rendered on December 21, 2010 does not include the two 20% deductions totaling $414.08, and includes a "Fuel Surcharge" of *10%*.  The total of the doctored invoice is *$7,217*, not $5,690.08.  Interocean paid the full $7,217 set out on the doctored invoice to PCM, and MARAD reimbursed Interocean the full $7,217.

2.      Invoice No. 0219586-IN, dated February 18, 2011 for services rendered February 15, 2011.  The original Shaver invoice sets out an invoice price of $2,937.50 for the use of the tug VANCOUVER and brakes down the cost of the tug at "2.5 HRS @ 175/HR."  The invoice also includes a price of $2,687.50 for the use of the tug UMATILL, and breaks down this cost at "2.5 HRS @ $107/HR."  The invoice also calculates a fuel surcharge" at 15% for a total of $843.75.  The total cost listed on this invoice is $6,568.75.  Invoice No. *0219346-IN* dated February 18, 2011 for services rendered on February 15, 2011 PCM submitted to Interocean lists the cost of the UMATILLA at 2.5 hours *at $2,360 per hour*, for a total price of *$5,900*, and lists the cost of the use of the VANCOUVER at 2.5 hours at *$2,670 per hour*, for a total cost of *$6,675*.  The fuel surcharge was increased from 15% to 16%, for a total of $2,012.

The total of the invoice doctored by PCM and sent to Interocean for payment was *$14,687*. Interocean paid the entire amount to PCMA, and MARAD reimbursed Interocean the full $14,687.

3.     Invoice No. 0219587-IN, dated February 18, 2011 for services rendered February 15 and 16. The original Shaver invoice lists the services of three tugs, the DESCHUTES, the LASSEN and the VANCOVER. The prices for the services of the DESCHUTES for February 15 are listed as "Tractor Tug – Assist Out" for $4,875; "Tractor Tug-Swing For Compass – 4 HRS @1175/HR" for $4,700; and "Tractor Tug Assist In" for $4,875. The services for the DESCHUTES on February 16 are listed as "Assist Out" for $3,370. The services for the VANCOUVER are listed as "Assist Out" for $3,370. This invoice includes a fuel surcharge of 15% for a total of $4,354.09. In addition, the invoice includes four 20% deductions for a total discount of $3,092. The total amount of this invoice, minus the $3,092 discount, is $35,672.09.

The invoice PCMA forwarded to Interocean for payment covering services rendered on February 15 and 16 lists the services of the LASSEN on February 15 for "Big Boat Swing for Compass" at "4HRS @ *$2360* for a total price of *$9,440*. It lists the service of the DESCHUTES on February 15 for "Tractor Tug Swing For Compass at "4HRS @ *$2670* for a total price of *$10,680*. As for services performed on February 16, the invoice lists the services of the DESCHUTES for "Assist-Out" for a cost of $4,875, and the use of the VANCOUVER for "Assist-Out" at a cost of $4,360. Moreover, this invoice does not include the $3,092 discount, and sets out a 15% fuel

surcharge of *$7,173.75*. The total amount of this altered invoice is *$55,198.75*, $19,526.66 more than the original Shaver invoice. Interocean paid PCMA the entire $55,198.75, which was reimbursed to Interocean by MARAD.

4.      Invoice No. 0219605-IN dated February 22, 2011 for services rendered on February 19, 2011. Shaver's original invoice lists the services of the tug CLEARWATER for "Big Boat Assist" at 3.5 hours @ $1075 an hour, for a total price of $3,762.50. It lists the services of the VANCOUVER for "Tractor Tug Assist" at 3.5 hours @ $1175 per hour, for a total price of $4,112.50. It includes a 15% fuel charge for a total of $1,181.25. The total invoice price is $9,156.25.

The invoice PCMA sent to Interocean for payment increased the price of the use of the CLEARWATER to $8,260, and increased the price of the VANCOUVER to $9,345, and includes a fuel surcharge of $2,640. The total amount for this invoice is *$20,345*, $11,188.75 more than Shaver's original invoice. Interocean paid the entire $20,345 to PCM, and was reimbursed that amount by MARAD.

5.      Invoice No. 0219606-IN dated February 22, 2011 for services rendered on February 19, 2011. Shaver's original invoice is for $9,801.08, and includes a discount of 20% for a total of $872, and a fuel surcharge of 16% for a total of $1,338.08. The invoice PCMA sent to Interocean for payment for these services did not include the 20% discount, and lists a fuel surcharge of $1,477.60. The total price of this invoice is $10,812.60. Interocean paid the entire $10,812.60 to PCMA, and was reimbursed that amount by MARAD.

6.     Invoice No. 0219826-IN dated April 4, 2011 for services performed on April 3, 2011.  Shaver's invoice is for $6,840, and includes a 20% discount for $674. And a fuel surcharge of 25% for a total of $1,348.  The altered invoice PCM sent to Interocean was for $10,125, which included a fuel service charge of $2,005, and did not include the 20% discount.  Interocean paid the entire $10,125 to PCM, and was reimbursed that amount by MARAD.

7.     Invoice No. 0220215-IN dated May 31, 2011 for services provided on April 24, 2011.  Shaver's original invoice was for $6,647.84, and again included two 20% discounts for a total discount of $1,348.  The fuel surcharge is listed as $1,455.84.  The altered invoice PCMA sent on to Interocean for payment was for $11,643, and did not include the two 20% discounts, and increased the prices for the use of the tugs DESCHUTES and WILLAMATTE, as well as increased the fuel surcharge.  Interocean paid the entire $11,683.75 to PCMA, and was reimbursed that amount by MARAD.

III.    DISCUSSION

A. The United States Has Not Waived Its Sovereign Immunity And Consented To Be Sued Herein Under Any Of The Three Statutes Applicable To Plaintiffs' Complaint For Breach Of Contract

 The United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85

L.Ed. 1058 (1941)); *see A & S Council Oil Co., Inc. v. Lader,* 56 F.3d 234, 238

(D.C.Cir.1995). A waiver of sovereign immunity "cannot be implied but must be

unequivocally expressed" in the relevant statute. *United States v. Mitchell,* 445 U.S.

535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. King,* 395

U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). "Waivers of immunity must be 'strictly

construed in favor of the sovereign,' and not 'enlarge[d] ... beyond what the language

[of the statute] requires.'" *United States Dep't of Energy v. Ohio,* 503 U.S. 607, 614, 112

S.Ct. 1627, 118 L.Ed.2d 255 (1992) (citations omitted). Thus, "no action lies against the

United States unless the legislature has authorized it." *Dalehite v. United States,* 346

U.S. 15, 30, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *see F.D.I.C. v. Meyer,* 510 U.S. 471,

114 S.Ct. 996, 1000–01, 127 L.Ed.2d 308 (1994). In order for plaintiff to maintain an

action against the United States, it therefore must establish that the United States has

explicitly waived its sovereign immunity by statute with respect to the type of claim

plaintiff has filed.

    In this case, there are three statutes applicable to Shaver's breach of contract

claim, the PVA, the CDA and the SIAA.  However, as discussed below, none of these

statutes provide Shaver with a waiver of immunity for a claim by one who is not a party

to a contract with the United States.

### 1. Waiver of Sovereign Immunity Under the PVA, CDA and SIAA.

#### a. Public Vessels Act.

Because the vessels at issue here are public vessels, we must look to the PVA to

determine whether there has been a waiver of sovereign immunity. The PVA provides that a civil action *in personam* may be brought against the United States in admiralty in cases involving disputes over compensation for towage. 46 U.S.C. § 31102(a)(2). However, the PVA itself does not provide a substantive cause of action against the United States; it simply waives sovereign immunity where admiralty law provides a cause of action. *Southwest Marine, Inc. v. United States*, 926 F.Supp. 142, 146 (N.D. Cal. 1995), citing *Nelson v. United States*, 639 F.2d 469, 473 (9th Cir. 1980). The PVA "merely provides a jurisdictional hook upon which to hang a traditional admiralty claim." *Id.*, citing *Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 444 (5th Cir. 1982). Here, because there is a lack of privity of contract between Shaver and the United States, Shaver has no cause of action against the Government for breach of contract under general maritime law. *Sealift Bulkers, Inc., supra.* As such, there has been no waiver of sovereign immunity, and the United States has not consented to be sued by Shaver for breach of contract.

b. <u>Contract Disputes Act</u>

Not only is Shaver's breach of contract claim controlled by the PVA, it is subject to the CDA. The CDA applies to claims arising under a contract of towage involving public vessels of the United States. *Remolcadores, supra.* (Owner of tug brought suit against the United States in tort and under towage contract. With respect to the contract claim, the court held, "Congress has conditioned the waiver of sovereign immunity under the [PVA] and [SIAA] upon compliance with the Contract Disputes

Act.")  In fact, all maritime contract cases involving public vessels are subject to the CDA.  *Dalton v. Southwest Marine*, 120 F.3d 1249, 1251 (Fed.Cir. 1997) ("nothing in section 603 of the Contract Disputes Act excludes maritime contracts from the purview of the Contract Disputes Act."); *Southwest Marine Inc. v. Danzig*, 217 F.3d 1128, 1137 (9th Cir. 2000) (same); *Bethlehem Steel Corp. v. Avondale Shipyards, Inc.*, 951 F.2d 92, 93 (5th Cir. 1992) ("it is undisputed that contracts for the repair of United States government ships are governed by the provisions of the [SIAA]. . . and are entrusted, as maritime contract actions, to the admiralty jurisdiction of the United States district courts. . . .  At the same time, all government contracts are subject to the provisions of the Contract Disputes Act." (Citations omitted); *Lake Union Drydock Co. v. United States*, 2007 WL 2984707 (W.D.Wash. 2007) (same).[3]  As discussed below, Shaver, a subcontractor, is precluded from pursuing its breach of contract claim against the United States under the CDA.

The CDA was enacted, in part, to solve jurisdictional confusion surrounding claims against the government; its purpose was "to provide a comprehensive system for the adjudication of contract claims against the government." *Ingersoll–Rand Co. v. United States,* 780 F.2d 74, 78 (D.C.Cir.1985). In furtherance of this goal, the CDA provided for administrative review of contract claims by a contracting officer, 41 U.S.C. § 7103(a)(1), and established two avenues for review of the contracting officer's

---

[3]  The CDA was previously codified at 41 U.S.C. § 601 *et seq.*  It was recodified January 4, 2011 at 41 U.S.C. § 7101 *et seq.*

decisions: either by appealing to the governing agency's board of contract appeals or by bringing an action in the United States Court of Federal Claims. 41 U.S.C. §§ 7104(a), 7104(b)(1). However, plaintiffs with maritime contract claims against the United States who have completed the CDA administrative review process may file suit in a United States District Court under the Suits in Admiralty Act. 41 U.S.C. § 7102(d). S*ee also, Southwest Marine, Inc. v. United States,* 43 F.3d 420, 424 (9th Cir.1994). This exception to the normal processes for review of CDA decisions was created by Congress so as "not to disrupt the United States District Court's traditional jurisdiction over maritime contracts" and in deference to the historic admiralty jurisdiction of the District Courts. *Jo–Mar Corp. v. United States,* 15 Cl.Ct. 602, 607–08 (1988); *Southwest Marine, supra.* 43 F.3d at 423–24; *Bethlehem Steel Corp. v. Avondale Shipyards, Inc.,* 951 F.2d 92, 93–94 (5th Cir.1992); *Whitey's Welding and Fabrication, Inc. v. United States,* 5 Cl.Ct. 284, 286 (1984).

The CDA explicitly waives sovereign immunity only with respect to contract claims brought by a "contractor," and a "contractor" is defined by the statute as "a party to a Federal Government contract other than the Federal Government." 41 U.S.C. § 7101(7). The courts have interpreted this phrase to include only parties with whom the Government is in privity of contract. *Erickson Air Crane Co. of Washington, Inc. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984) ("government consents to be sued only by those with whom it has privity of contract, which it does not have with subcontractors...."); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1548–52

(Fed.Cir.1983) (same); *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 479 F.2d 1334, 1337 (Ct.Cl.1973) ("[U]nless the plaintiff can provide evidence of the existence of some type of contract between it and the United States, it cannot, as a subcontractor, recover directly from the United States for amounts owed to it by the prime.").

It is undisputed that Shaver is not a party to a contract with the Federal Government. At best, Shaver is an independent subcontractor retained, not by Interocean, the Government's agent, but by a wholly unrelated third-party, PCMA, which itself has no contractual relation with the United States. Accordingly, the United States has not waived its sovereign immunity and consented to be sued herein under the CDA.[4]

### c. Interocean Could not Bind the United States to a Subcontract

Shaver alleges in its Complaint, as well as its motion, that PCMA was the United States "agent" when it was dealing with PCMA. This is simply not the case. PCMA was not, nor has it ever been, an agent of the United States. Nor has there ever been any contractual relation between the United States and PCMA. (Cahill Declaration ¶ 4). To foreclose any argument based upon an assertion that Shaver's dealings with PCMA and/or Interocean somehow bound the Government to an enforceable contract, the

---

[4] The United States notes that even if, assuming for argument sake only, Shaver was in privity of contract with the United States, Shaver's failure to submit a certified claim to the appropriate Contract Officer divest this Court of jurisdiction. Submittal of a certified claim to the appropriate Contracting Officer is a mandatory jurisdictional prerequisite to filing suit in the district court. *Remolcadores, supra; Paragon Energy Corp. United States*, 953 F.2d 1337 (Fed.Cir. 1992). Shaver did not submit a certified claim to the appropriate *Contracting Officer*, it simply sent an "Extension of Jurisdiction Act *Tort Claims Act* Claim Notice" to MARAD's Chief Counsel.

United States submits that "a contractor cannot bind the Government via provisions of a subcontract unless such authority has been granted by the Government." *Globex Corp. v. United States*, 54 Fed.Cl. 343, 350 (2002). Here, the United States' actual ship manager, Interocean, did not have the authority to bind the Government to a subcontract.

Section G.7.2 of the ship management agreement between Interocean and the United States provides in pertinent part, emphasis added:

> When the Ship Manager acquires products or services as a prime contractor from a subcontractor under the procedures set forth in Attachment J-2, the Ship Manager *is not an agent of the United States*. Under the Contract Dispute Act the subcontractor has no direct right to sue the United States or the Maritime Administration for claims and disputes arising under its contract with the Ship Manager since there is no privity of contract between such subcontractor and the Maritime Administration . . . .

(See Exhibit "A" attached to the Cahill Declaration.)

Lest Shaver argue that it was of the belief that it was dealing with an agent of the Government that had the authority to bind the United States to a contract, the United States notes that, "anyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government." *Trauma Services Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir. 1997). (Of course, here there was no agreement at all between Shaver and the United States.)

In this case, even the Government's actual ship manger, Interocean, did not have the authority to bind the Unites States to a contract with Shaver. This being the case,

Shaver cannot argue that PCMA - a party with no contractual relation whatsoever with the Government - had any authority to bind the United States to a contract. And in the event Shaver were to argue that by providing towing services to public vessels it was somehow the beneficiary of an implied-in-fact contract with the Government, the United States notes that, "the mere conferring of a benefit on the government does not create an implied-in-fact contractual relationship." *Heydt v. United States*, 38 Fed.Cl. 286, 302 (1997).

    d.    <u>Suits in Admiralty Act</u>

The SIAA provides that claims may be brought against the United States "in cases where if such vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained...." 46 U.S.C. § 30903. Courts have long recognized that an admiralty or maritime claim may be brought against the United States to the same extent that it could be asserted against a private person in the Government's position. *Williams v. Central Gulf Lines,* 874 F.2d 1058, 1061–63 (5th Cir.1989), *cert. denied,* 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 837 (1990); *Hillier v. Southern Towing Co.,* 714 F.2d 714, 722 (7th Cir.1983); *Bearce v. United States,* 614 F.2d 556, 558–59 (7th Cir.1980); see also *Green v. United States,* 530 F.Supp. 17, 18 (N.D. Cal. 1981). Thus, if Shaver could bring its contract claim against a similarly situated private party, the SIAA provides a waiver of sovereign immunity to permit a suit against the United States. This, however, Shaver cannot do.

It is axiomatic that there can be no breach of contract unless there is a valid

contract in the first instance.  *Mason Agency, supra.*  The fact that the alleged contract at

issue may be a maritime contract which brings into play the SIAA and the court's

admiralty jurisdiction is of no import.  *Sealift Bulkers, Inc.,* supra.  As with the PVA, the

SIAA is not itself a source of any contractual rights or remedies as distinct from a waiver

of the government's defense of sovereign immunity.  *Id., see also, Williams v. Central Gulf

Lines,* 874 F.2d at 1062; *Hillier v. Southern Towing Co.,* 714 F.2d at 721. Rather, it merely

permits a plaintiff to bring a claim against the government to the same extent as it could

bring suit against a private party. To reiterate the facts of this case: Shaver has no contract

with the United States, nor is it in privity of contract with the United States.  Under these

circumstances, Shaver could bring no contract action against a private party. Thus, the

SIAA provides no basis for a suit against the United States.

> B.    Material Issues Of Fact Exist Regarding Whether There Is Privity Of Contact
> Between The United States And Shaver And To What Extent, If Any,
> Interocean And/Or PCMA Were Acting As Agents Of The United States
> <u>Thereby Precluding Summary Judgment On Shaver's Complaint</u>

The United States respectfully submits that the Court lacks subject matter

jurisdiction over Shaver's Complaint for breach of contract based upon the principles of

sovereign immunity discussed above.  Therefore, Shaver's motion for summary judgment

must be denied, and its Complaint dismissed.  However, should the Court determine that

subject matter jurisdiction does exist, then Shaver's motion must be denied on the grounds

that material issues of fact exist as to whether there is privity of contract between Shaver

and the United States to support a breach of contract claim, and to what extent, if any,

Interocean and/or PCMA were acting as agents of the United States.

Summary judgment may not be granted if a genuine issue of material fact exists. That is, "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party summary judgment will not lie. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The issue of material fact required by Fed.R.Civ.P. 56 to be present to entitled the nonmoving party to proceed to trial is not required to be resolved conclusively in favor of that party. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. In a contract case, such as the one at bar, the moving party must establish "beyond controversy every essential element of its [contract claim]. *Southern California Gas Co. v. City of Santa Anna*, 336 F.3d 885, 888 (9th Cir. 2003).

At this stage, Shaver has not established beyond controversy that it was in privity of contract with the United States. Nor, the United States submits, can it. Shaver simply sets forth unsubstantiated claims that PCMA was the United States agent. Moreover, Shaver completely ignores the role of Interocean, the actual ship operator, in the alleged transaction for towing services. This in-and-of-itself leads to yet another material issue of disputed fact, to what extent - if any - was Interocean and/or PCMA acting as an agent of the United States. The Ninth Circuit has held that "[u]nless only one conclusion may be drawn, existence of agency and the extent of an agent's authority is a question of fact and should not be decided on summary judgment." *C.A.R. Transp. Brokerage Co., Inc. v. Draden Restaurants, Inc.,* 213 F.3d 474, 479–480 (9th Cir.2000).

Based upon the above disputed issues of material fact, even if the Court were to find it had subject matter jurisdiction over Shaver's Complaint, the Court should deny Shaver's motion for summary judgment.

IV.     CONCLUSION

There has been no waiver of sovereign immunity under the three statutes applicable to Shaver's claim against the Government for breach of contract, the Public Vessels Act, the Contract Disputes Act and the Suits in Admiralty Act. Consequently, the Court lacks subject matter jurisdiction over Shaver's Complaint. Consequently, the United States respectfully submits that the Court must deny Shaver's motion for summary judgment.

In the alternative, should the Court find that it may exercise subject matter jurisdiction over Shaver's Complaint, Shaver has failed to conclusively establish every element of its contract claim against the United States, *i.e.*, privity of contract and the extent, if any, of Interocean's and/or PCMA's authority to bind the United States to a contract. Accordingly, the United States respectfully requests that the Court deny Shaver's motion for summary judgment.

//

//

//

Dated: February 8, 2013

STUART DELERY
Assistant Attorney General
S. AMANDA MARSHAL
United States Attorney
RON SILVER
Chief, Civil Division
Assistant United States Attorney
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office

   /s/ Eric Kaufman-Cohen
ERIC KAUFMAN-COHEN
Trial Attorney
U. S. Dept. of Justice

Attorneys for Plaintiff
United States of America

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 8, 2013, the forgoing THE UNITED STATES'
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, was served electronically
through CM/ECF on:

> Daniel F. Knox, Esq.
> William J. Ohle
> Schwabe Williamson & Wyatt
> 1211 S.W. 5th Avenue, Suite 1900
> Portland, OR 97204
>
> Attorneys for Plaintiff

> s/ Eric Kaufman-Cohen
> ERIC KAUFMAN-COHEN