# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **SHAVER TRANSPORTATION COMPANY**, | Case No. 3:12-cv-01448-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

Daniel F. Knox, William J. Ohle, and David R. Boyajian, Schwabe Williamson & Wyatt, PC, 1211 S.W. Fifth Avenue, Suite 1900, Portland, OR 97204. Attorneys for Plaintiff.

R. Michael Underhill and Eric Kaufman-Cohen, U.S. Department of Justice, Torts Branch Civil Division, 450 Golden Gate Avenue, Room 7-5395, San Francisco, CA 94102; and S. Amanda Marshal, U.S. Attorney, and Ron Silver and Stuart Delery, Assistant U.S. Attorneys, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

This case arises under the Court's admiralty jurisdiction. *See* 28 U.S.C. § 1333. Shaver

Transportation Company ("Shaver" or "Plaintiff") seeks payment of invoices for towing services

it provided to two vessels owned by the United States ("Defendant"). Shaver moved for

PAGE 1 – OPINION AND ORDER

summary judgment, and the United States moved to dismiss for lack of subject matter jurisdiction. For the reasons that follow, the Court grants the United States' motion to dismiss and denies as moot Shaver's motion for summary judgment.

## STANDARDS

"[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

The United States has submitted affidavits that challenge the complaint's jurisdictional allegations. When a defendant factually challenges the plaintiff's assertion of jurisdiction, the Court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In such situations, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039.

## BACKGROUND

The *M/S Pacific Collector* and the *M/S Pacific Tracker* are public vessels owned by the United States by and through the U.S. Department of Transportation Maritime Administration ("MARAD"). Cahill Decl. ¶ 1. The vessels are operated by Interocean American Shipping Corporation ("Interocean") pursuant to ship management agreements between Interocean and

PAGE 2 – OPINION AND ORDER

MARAD. *Id.* ¶ 2. In early 2011, Interocean requested that Pacific Coast Maritime AG ("PCMA") arrange tug services for the vessels, and PCMA retained Shaver to provide those services. Corry Decl. ¶ 1. On multiple occasions, Shaver provided tug services for the *M/S Pacific Collector* and the *M/S Pacific Tracker* at the Swan Island ship repair yards in Portland, Oregon, for which it invoiced PCMA. Compl. ¶ 6. PCMA then invoiced Interocean for the tug services, which in turn invoiced MARAD. Corry Decl. ¶ 3; Cahill Decl. ¶ 3.

According to Shaver, it was never paid for $74,986.01 of the invoiced services. Compl. ¶ 6. According to the Government, PCMA inflated Shaver's invoices before submitting them to Interocean. Corry Decl. ¶ 5. Interocean paid PCMA based on these inflated invoices, and MARAD reimbursed Interocean in full. *Id.* ¶ 4. It appears that PCMA, not a party to this law suit, never paid Shaver. *See* Compl. ¶ 7. Because it was not paid for its services, Shaver asserts that the United States, as owner of the *M/S Pacific Collector* and the *M/S Pacific Tracker*, has breached its maritime contract with Shaver. *Id.*

## DISCUSSION

The United States argues that this Court lacks jurisdiction because the United States has not waived its sovereign immunity over the claim asserted by Shaver. The United States may not be sued "save as it consents to be sued …, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted); *accord Lehman v. Nakshian*, 453 U.S. 156, 161 (1981); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). For this Court to have jurisdiction, there must be both a clear waiver of sovereign immunity and "a claim falling within the terms of the waiver." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). The Court holds that the United States has expressly waived its sovereign

PAGE 3 – OPINION AND ORDER

immunity for certain maritime actions, but that Shaver has not alleged a cause of action falling within the terms of that waiver.

## A.  Waiver of Sovereign Immunity

Congress can waive the United States' sovereign immunity only through an express and unequivocal statement; waiver will not be implied. *Dep't of Treasury-I.R.S. v. Fed. Labor Relations Auth.*, 521 F.3d 1148, 1153 (9th Cir. 2008); *accord United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011). Waivers of sovereign immunity are to be construed strictly, narrowly, and in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992).

Both the Public Vessels Act ("PVA"), 46 U.S.C. § 31101 *et seq.*, and the Suits in Admiralty Act ("SAA"), 46 U.S.C. § 30901 *et seq.*, waive the United States' sovereign immunity for certain maritime claims. Under the PVA, "[a] civil action in personam in admiralty may be brought, or an impleader filed, against the United States for-- (1) damages caused by a public vessel of the United States; or (2) compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States." 46 U.S.C. § 31102(a). The waiver of sovereign immunity under the SAA provides that, "[i]n a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation." *Id.* at § 30903(a). Both statutes vest venue in the U.S. District Courts. *Id.* at § 31104 (PVA); *id.* at § 30906 (SAA).

When Congress enacted the SAA in 1920, it limited the Act's waiver of sovereign immunity to ships employed by the United States as merchant vessels. Congress then enacted the PVA in 1925 to authorize suits against the United States for damages caused by public vessels.

*See United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 170-71 (1976). Although the PVA

incorporates the provisions of the SAA to the extent they are not inconsistent with the PVA,

46 U.S.C. § 31103, it was still possible for a government-operated vessel to be neither a "public

vessel" nor "employed as a merchant vessel," in which case any contract claim against the

United States would have to be brought under the Tucker Act before the U.S. Court of Federal

Claims. *See United Cont'l Tuna*, 425 U.S. at 171-75. To alleviate the resulting jurisdictional

difficulties, Congress amended the SAA in 1960, broadening its language and deleting the

requirement that the vessel in question be "employed as a merchant vessel." *Id.* at 175-77. This

has caused confusion in the courts regarding whether the SAA or the PVA applies in particular

cases. In interpreting the effects of this amendment, however, the Supreme Court has held that

"claims within the scope of the Public Vessels Act remain subject to its terms," even if the

claims would also be covered by the expanded scope of the Suits in Admiralty Act. *Id.* at 181.

Thus if Shaver's claim falls under the PVA, to the limited extent the PVA and the SAA differ,

the PVA controls.

The parties agree that the *M/S Pacific Collector* and the *M/S Pacific Tracker* are public

vessels. After initially asserting that the PVA applies to Shaver's claim, *see* U.S. Mem. Opp'n

Mot. Summ. J., Dkt. 15, at 3, the United States now argues that the PVA does *not* apply, citing

*Continental Casualty Co. v. United States*, 156 F. Supp. 942 (Ct. Cl. 1957). The court in

*Continental Casualty* reasoned that the PVA's waiver of sovereign immunity applied by its terms

only to claims based on torts, contracts for salvage, and towage and salvage provided to vessels

in distress. *Id.* at 943-44. The Ninth Circuit, however, has rejected such a narrow reading of the

PVA's waiver of sovereign immunity. *See Thomason v. United States*, 184 F.2d 105, 107-08 (9th

Cir. 1950).

PAGE 5 – OPINION AND ORDER

Other courts have cast doubt on *Thomason*'s interpretation of the PVA. The Eleventh Circuit noted that *Thomason* was decided before the 1960 amendment of the SAA, at a time when courts might have interpreted the PVA's waiver more broadly to avoid hardship to plaintiffs caught in the jurisdictional quagmire between the PVA, the SAA, and the Tucker Act. *See Marine Coatings of Ala. v. United States*, 71 F.3d 1558, 1563-64 & n.8 (11th Cir. 1996). But the Ninth Circuit has very recently—and emphatically—reaffirmed *Thomason*, declaring that "[f]or decades, we—and the Supreme Court—have interpreted that phrase [in 46 U.S.C. § 31102] broadly. Indeed, 60 years ago we interpreted the phrase 'damages caused by a public vessel' to encompass *all* tort and contract claims 'aris[ing] out of the possession or operation of the ship.'" *Tobar*, 639 F.3d at 1198 (quoting *Thomason*, 184 F.2d at 107) (emphasis in original).[1] Following the clear direction of *Tobar*, the Court holds that the PVA constitutes an explicit waiver of the United States' sovereign immunity for maritime breach of contract claims involving public vessels.

**B.  Substantive Cause of Action**

The waiver of sovereign immunity under the PVA does not fully resolve the question of this Court's jurisdiction, however. The PVA only waives sovereign immunity; it does not itself provide a cause of action. *See Dearborn v. Mar Ship Operations*, 113 F.3d 995, 996 n.1 (9th Cir. 1997); *accord O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 85 (3d Cir. 1996); *Manuel v. United States*, 50 F.3d 1253, 1255 n.1 (4th Cir. 1995); *Blanco v. United States*, 775 F.2d 53, 63 n.8 (2d Cir. 1985). Shaver must still identify another source of law that provides it with a cause of action that falls within the PVA's waiver of sovereign immunity.

---

[1] Although the Supreme Court has interpreted the PVA's waiver of sovereign immunity broadly, it has twice declined to answer the specific question of whether that waiver extends to all contract claims involving public vessels. *See United Cont'l Tuna*, 425 U.S. at 181 n.21; *Calmar S.S. Corp. v. United States*, 345 U.S. 446, 456 n.8 (1953).

PAGE 6 – OPINION AND ORDER

In its complaint, Shaver has asserted only a claim for breach of contract. The Contract Disputes Act ("CDA") "applies to any express or implied contract … made by an executive agency for … the procurement of services." 41 U.S.C. § 7102(a)(2). The CDA requires contractors to submit any contract-related claim against the United States to the relevant contracting officer. *Id.* at § 7103(a)(1). The contractor may later challenge the contracting officer's decision by appealing it to an agency board and then to the Federal Circuit, *id.* at §§ 7104(a) & 7107(a), or by bringing an action directly in the U.S. Court of Federal Claims, *id.* at § 7104(b). For maritime contracts, the CDA specifically provides that appeals under § 7107(a) or direct actions under § 7104(b) are governed by the PVA and SAA "to the extent that those [acts] are not inconsistent with [the CDA]." *Id.* at § 7102(d). Thus, "plaintiffs with maritime contract claims against the United States *who have completed the CDA administrative review process* may file suit in a United States District Court" rather than in the U.S. Court of Federal Claims. *Sealift Bulkers, Inc. v. Republic of Armenia*, No. 95-1293 (PLF), 1996 WL 901091, at *3 (D.D.C. Nov. 22, 1996) (emphasis added); *see also, e.g.*, *Bethlehem Steel Corp. v. Avondale Shipyards, Inc.*, 951 F.2d 92, 93 (5th Cir. 1992); *Sw. Marine, Inc. v. United States*, 926 F. Supp. 142, 144 (N.D. Cal. 1995). Although it directs maritime contract cases to the U.S. District Courts, § 7102(d) makes clear that the CDA not only applies to PVA and SAA cases, but supersedes those statutes when their terms conflict. *See Sw. Marine v. Danzig*, 217 F.3d 1128, 1137 (9th Cir. 2000); *see also Bethlehem Steel*, 951 F.2d at 93; *River & Offshore Servs. Co. v. United States*, 651 F. Supp. 276, 281 (E.D. La. 1987).

Submitting a proper administrative claim to the contracting officer is a jurisdictional prerequisite to bringing either a direct action or an appeal in any federal court under the CDA, even in the maritime context. *See Bethlehem Steel*, 951 F.2d at 93-94; *Sw. Marine*, 926 F. Supp.

at 144-45; *River & Offshore Servs.*, 651 F. Supp. at 281.[2] Further, "contracting officers have jurisdiction only over claims by *contractors* against the government, not over claims brought directly by subcontractors." *NavCom Def. Elecs., Inc. v. Ball Corp.*, 92 F.3d 877, 879 (9th Cir. 1996). A "contractor" is defined by the CDA as "a party to a Federal Government contract other than the Federal Government." 41 U.S.C. § 7101(7). Thus, unless a subcontractor can establish that it is a party to a contract with the Federal Government, it may not submit a claim directly to the contracting officer as required by the CDA, which in turn deprives the courts of jurisdiction over the subcontractor's self-asserted claim. *See Clean Giant, Inc. v. United States*, 19 Cl. Ct. 390, 392-93 (1990); *Thomas Funding Corp. v. United States*, 15 Cl. Ct. 495, 501-02 (1988).[3]

Establishing that Shaver is a party to a contract with the United States is equivalent to establishing that Shaver has privity of contract with the United States. *See United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550-51 (Fed. Cir. 1983). Shaver alleges that PCMA was an agent of the United States such that any contract between PCMA and Shaver was entered into on behalf of the United States. *See* Compl. ¶ 6. To establish privity based on an agency theory, however, Shaver would have to show that "the agency relationship between the government and the prime contractor was established by clear contractual consent." *Johnson Controls*, 713 F.3d at 1551. To the contrary, Interocean's contract with the United States expressly stated that

---

[2] Shaver did submit a claim to MARAD's general counsel, although the claim did not reference the CDA. Compl. Ex. A (asserting claim pursuant to the Extension of Jurisdiction Act, 46 U.S.C. § 30101, and the Tort Claims Act, 28 U.S.C. § 1346). The Government argues that Shaver did not satisfy the CDA's requirement of submitting an administrative claim in the proper format to the proper person. Because the Court holds it lacks subject matter jurisdiction on other grounds, the Court does not resolve the adequacy of the form or recipient of Shaver's administrative claim.

[3] Typically, a subcontractor submits a claim under the CDA by requesting that the prime contractor "sponsor" the claim. Because this was not the route chosen by Shaver, the question of "sponsorship" does not arise in this case.

PAGE 8 – OPINION AND ORDER

Interocean was not an agent of the United States and that any subcontractor would have no direct right to sue the United States under the CDA.[4] Because Interocean was not acting as an agent of the United States, PCMA could not in turn have been acting as a government agent when it arranged for Shaver's services.

Shaver also argues that it is a third-party beneficiary to the United States' contract with Interocean. "Before a third party can recover under a contract, it must show that the contract was made for its direct benefit—that it is an *intended* beneficiary of the contract." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) (emphasis added). "Parties that benefit from a government contract are generally assumed to be *incidental* beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Id.* at 1211 (emphasis added); *see also GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank*, 671 F.3d 1027, 1033-34 (9th Cir. 2012). As in *Klamath Water Users*, the plain language of the contract between the United States and Interocean is sufficient to rebut the contention that Shaver is an *intended* third-party beneficiary: the contract expressly disclaimed any intent to grant enforceable rights to subcontractors like Shaver. *See* 204 F.3d at 1211.

---

[4] The United States has submitted the relevant provisions of Interocean's contract with MARAD. *See* Decl. Cahill, Ex. A (Dkt. 16-1). Section G.7.1.1.1 of Interocean's contract states in relevant part, "The Ship Manager is not an agent of the United States under the Contract Disputes Act and nothing contained herein shall be deemed to extend to the Ship Manager the status of 'agent of the United States' under any laws relating to contracts. (see Section G.7.2)." Section G.7.2 states in relevant part:

> When the Ship Manager acquires products or services as a prime contractor from a subcontractor under the procedures set forth in Attachment J-2, the Ship Manager is not an agent of the United States. Under the Contract Disputes Act the subcontractor has no direct right to sue the United States or the Maritime Administration for claims and disputes arising under its contract with the Ship Manager since there is no privity of contract between such subcontractor and the Maritime Administration.

PAGE 9 – OPINION AND ORDER

In sum, the express language of the contract between the United States and Interocean disclaims any privity of contract between the United States and subcontractors like PCMA and Shaver, and Shaver has not submitted evidence to the contrary. Because Shaver is not in privity of contract with the United States, this Court lacks jurisdiction under the CDA to hear Shaver's breach of contract claim.

For the sake of completeness, the Court notes that, under Ninth Circuit precedent, the CDA is not necessarily "the exclusive basis for litigation of claims relating to government contracts" before the U.S. District Courts. *Wright v. U.S. Postal Serv.*, 29 F.3d 1426, 1428 (9th Cir. 1994). In *Wright* and *Concrete Tie of San Diego, Inc. v. Liberty Construction, Inc.*, 9 F.3d 800 (9th Cir. 1993), the Ninth Circuit held that equitable claims related to government contracts can be entertained in the district courts (rather than in the U.S. Court of Federal Claims) as long as there is an independent basis for jurisdiction separate from the CDA and the Tucker Act. *Wright*, 29 F.3d at 1428-30 (holding that subcontractors could bring equitable liens against the U.S. Postal Service in district court based on the Postal Reorganization Act's "sue and be sued" clause); *Liberty Constr.*, 9 F.3d at 801-02 (holding that a prime contractor could bring a claim for indemnification against the Small Business Administration in district court under the Small Business Act's "sue and be sued" clause). Shaver has not brought an equitable claim, however, but only a claim for breach of contract.[5]

The Court therefore grants the United States' motion to dismiss Shaver's complaint for

---

[5] Similarly, Shaver's reliance on *Stevens Technical Services, Inc. v. United States*, 913 F.2d 1521 (11th Cir. 1990), does not overcome the United States' arguments in favor of dismissal. The Eleventh Circuit in *Stevens* held that a subcontractor could bring an *in personam* action against the United States based on *in rem* principles, as provided for in 46 U.S.C. § 30907(b)(1)(B). Section 30907, a provision of the SAA, is incorporated by the PVA. *Canadian Aviator v. United States*, 324 U.S. 215, 227 (1945). But § 30907 requires the plaintiff to elect in its complaint to proceed according to *in rem* principles, which Shaver has not done. *See* 46 U.S.C. § 30907(b)(1)(A).

lack of subject matter jurisdiction. Although this outcome may seem harsh from Shaver's perspective, the Court notes the important policies that underlay the CDA's restrictions on subcontractor claims. *See, e.g.*, *Johnson Controls*, 713 F.2d at 1548-49 (discussing legislative history and purpose of the CDA). The Court also makes no determination as to whether Shaver may have a viable claim against PCMA or against Interocean, particularly if PCMA acted as an agent of Interocean. As presently framed, however, the complaint does not assert any claim over which this Court may exercise jurisdiction.

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss for Lack of Jurisdiction, Dkt. 18. It DENIES Plaintiff's Motion for Summary Judgment, Dkt. 12, as moot.

**IT IS SO ORDERED**.

DATED this 5th day of June, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge